IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2018 Session

## NANCY MAUREEN JARMAN v. FRANKLIN N. JARMAN

**Appeal from the Circuit Court for Davidson County**
**No. 74538     Philip E. Smith, Judge**

_____

### No. M2017-01730-COA-R3-CV
_____

This appeal arises from competing post-divorce petitions to increase, modify and/or terminate alimony *in futuro* and an award of attorney's fees arising therefrom. In the parties' 1975 divorce decree, the husband was ordered to pay alimony *in futuro* to the wife, which was subsequently modified in 1980, and most recently in 2003. In 2016, the former wife petitioned the court to increase alimony, which the former husband answered by filing a counter-petition to reduce or terminate alimony. The trial court denied both petitions and awarded the former wife attorney's fees. Both parties appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT, J. joined. W. NEAL MCBRAYER, J., filed a separate concurring and dissenting opinion.

David Scott Parsley and Michael K. Parsley, Nashville, Tennessee, for the appellant, Nancy Maureen Jarman.

Gregory D. Smith, Brenton H. Lankford, and Ann Ralls Niewold, Nashville, Tennessee, for the appellee, Franklin M. Jarman.

### OPINION

Nancy Maureen Jarman ("Wife") and Franklin N. Jarman ("Husband") were married in 1970 and divorced on January 3, 1975. In the Final Decree of Divorce, Husband was ordered to pay alimony *in futuro* to Wife in the amount of $3,100 per month for the first eleven months, and $2,400 per month thereafter until Wife's death or remarriage. The divorce decree did not include a contractual provision regarding an

entitlement to recover attorney's fees in the event either party sought or opposed a post-divorce petition to modify or terminate alimony.

On March 5, 1980, the trial court modified Husband's alimony obligation, reducing the amount to $600 per month. Thereafter, by an order entered December 12, 2003, the trial court increased Husband's alimony obligation to $1,000 per month.

On March 24, 2016, Wife filed a petition to increase alimony, alleging that "since the entry of the last Order affecting alimony in this matter, there has been a material and substantial change of circumstances justifying an increase in the amount of alimony." Husband filed an answer and counter-petition to terminate or reduce his alimony obligation.

Trial took place over three non-consecutive days in February, April and May 2017, where Husband and Wife were the only witnesses. At the time of trial, Wife was 76 years old, and Husband was 85.

Wife testified that the last time she had a fulltime job was in 2000, which was prior to the 2003 modification order, although she did do some consulting work brokering and selling art pieces in 2003. More recently, Wife worked as an in-home caretaker performing household tasks for her client, such as cooking, cleaning and caring for her client's pet, in exchange for room and board. Wife has been working and living with her current client since December 2016, when she returned to Nashville. Prior to that, she lived in Austin, Texas and had the same working and living arrangement with another client.

Before becoming an in-home caretaker, Wife lived in an extended stay motel in Texas. Wife testified that the motel was riddled with drug dealing and prostitution. Wife stated that she moved into the motel to escape a condominium that had become hazardous to her health. Wife claimed that she had to go to the emergency room three or four times in the year she lived in the condominium from being exposed to drug fumes in her housing complex. Wife testified that she was evicted from the condominium because she refused to pay rent due to "the circumstances [she] was living under."

Wife testified that she could not afford to live on her own, explaining that if she could afford to live independently, she would do so. Wife said she looked at apartment complexes on "Harding Road or West End, [and] Broadway" and a couple on "Hillsboro Road," but went on to say "they were just absolutely awful and overpriced." Wife elaborated that "because of the real estate market and the cost of renting these days in a safe place, in a good location … [she] really only … found one place to rent near where [she] live[s] right now, and the rent is $2,800." On cross-examination, Wife was asked if she found any potential apartments for less than $2,800, and she responded that she found apartments between $2,000 and $2,200, but they "were dumps, if you know what a dump

is." Wife further testified that she found a one-bedroom apartment for $1,629 per month, but said it was "subpar." Wife admitted that she confined her search for apartments to her current area of Nashville, which is Belle Meade and West End. Wife also acknowledged that she had only owned one home since the parties' divorce in 1975, which she sold shortly after the 1980 alimony modification order.

Wife explained she has not had a car since her vehicle was stolen in 2010 and that she could not afford to replace it. She also stated that in 2000, while living in Texas, she "lost a lot of things in a flood," and "had a number of robberies and that sort of thing." Wife admitted that she has been unable to make ends meet on numerous occasions, has been forced to sell possessions such as jewelry and paintings, and has borrowed money from friends that she intends to pay back. Wife testified that she owes $2,000 to one friend, $600 to another, and has not been able to pay her attorney to represent her in this case. Wife claimed that the only possessions of value she had to her name were some photographs, a few pieces of art, a fur coat, and some furniture. When questioned further, Wife admitted she owned a few pieces of jewelry worth a few thousand dollars that she forgot to disclose during the discovery process.

Regarding her employment, Wife admitted that she has not looked for any other jobs since moving back to Nashville in late 2016. Her monthly gross income is $1,729, which consists of $729 per month in social security income and $1,000 per month Wife receives in current alimony from Husband.

As for Husband, he married his current wife in 1976, and they live in a home he owns that is valued at more than $1.2 million. He also owns property on Center Hill Lake and multiple vehicles. Husband has not been gainfully employed since his last employer, Wellness Environments, closed in December 2016. Although he was 85 years old and not working at the time of trial, Husband insisted that he was not retired. Husband has an annual income of approximately $81,000, which consists of a monthly pension from Genesco, his former employer, as well as monthly social security and veterans' disability income. His wife's annual income as an interior designer is approximately $38,000, and she receives an additional $15,000 to $20,000 annually in obligatory distributions as the beneficiary of a trust. Husband testified that he paid their taxes, but stated that he could not comment on the value of his wife's separate assets, and claimed he did not know how much she contributed to their monthly living expenses.

The meager evidence Husband provided in discovery indicated that his monthly discretionary spending far exceeded his monthly income of $6,760.40. Husband's monthly expenditures included, *inter alia*, approximately $800 per month for his country club membership, approximately $4,100 per month for a million-dollar life insurance policy benefitting his current wife, approximately $1,200 per month spent on repaying school loans for their adult children, $520 per month for a hired groundskeeper/housekeeper, and approximately $200 per month on alcohol. Husband

testified that he provided the majority of financial support for his current wife and paid most of their bills.

When asked how he could continue to pay expenses that significantly exceeded his income, Husband testified he would "work it out" and that certain cuts to his discretionary spending were "on the planning table." Husband claimed he did not know the current value of his stocks nor did he know what happened to the stock he previously had in Genesco that was worth approximately one million dollars at the time of the parties' divorce in 1975. The trial court found Husband was evasive in many of his answers and said that many of Husband's answers were not believable. The trial court surmised that Husband was attempting to hide his income from the court. Accordingly, the trial court gave greater weight to Wife's testimony which he found to be more credible.

On August 29, 2017, the trial court issued a memorandum opinion and order. It found that although Wife's financial needs had increased, Wife failed to show that her increased needs were unforeseeable or unanticipated at the time of the last order in 2003. Hence, the court denied her petition on the ground that she failed to prove a material change in circumstances.

As for Husband's counter-petition, the trial court found that Husband proved a substantial and material change in circumstances; however, he failed to prove that the requested modification was appropriate under the circumstances, given the vast disparity in assets and income between the parties. Therefore, the trial court denied Husband's counter-petition to terminate his alimony obligation and awarded Wife attorney's fees in the amount of $14,000. This appeal followed.

## ISSUES

Each party presents one issue. Wife contends the trial court erred in failing to find that she proved a material and substantial change of circumstances justifying an increase in alimony *in futuro*. For his part, Husband contends the trial court erred in awarding attorney's fees in any amount to Wife; however, he does not challenge the amount of the award.

## STANDARD OF REVIEW

On appeal, we review the trial court's findings of fact de novo upon the record, with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). "Because modification of a spousal support award is factually driven and calls for a careful balancing of numerous factors, a trial court's decision to modify support payments is given wide latitude within its range of discretion." *Bogan v. Bogan,* 60 S.W.3d 721, 727 (Tenn. 2001) (citations omitted). In particular, the issue of

"whether there has been a sufficient showing of a substantial and material change of circumstances" is in the trial court's sound discretion. *Id.* at 727 (quoting *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999)). Accordingly, on appeal we are "generally disinclined to second-guess a trial judge's spousal support decision." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)).

As for attorney's fees, in the absence of a contractual provision, we review the issue of whether a party in a proceeding to modify alimony is entitled to an award of attorney's fees pursuant to the abuse of discretion standard.[1] *See (Cooley) v. Cooley*, 543 S.W.3d 674, 682 (Tenn. Ct. App. 2016); *Malkin v. Malkin*, 475 S.W.3d 252, 263 (Tenn. Ct. App. 2015); Tenn. Code Ann. § 36-5-103(c); *see also Eberbach v. Eberbach*, 535 S.W.3d 467, 479 n. 7 (Tenn. 2017) ("[W]ith regard to a trial court's award of attorney's fees under [Tenn. Code Ann. §] 36-5-103(c), the Court of Appeals' standard of review is abuse of discretion for both the issue of whether the party is entitled to an award and the issue of the amount of the fees awarded.").

**ANALYSIS**

## I.   MODIFICATION OF ALIMONY *IN FUTURO*

Alimony *in futuro* provides long-term support until the death or remarriage of the recipient and "may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." *Cooley*, 543 S.W.3d at 682 (quoting Tenn. Code Ann. § 36-5-121(f)(2)(A)); *Gonsewski*, 350 S.W.3d at 107. A change in circumstances is "'substantial' when it significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728. A change in circumstances is "material" when the change occurred since the original alimony award, and the change was not anticipated or contemplated by the parties at the time of the award. *Id.* (citing *Watters*, 22 S.W.3d at 821). Additionally, the change in circumstances "must have occurred since the original award." *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993).[2]

---

[1] If the issue is whether a former spouse is entitled to attorney's fees pursuant to a provision in a marital dissolution agreement, "the proper standard of review is de novo because the issue is a question of law." *Eberbach*, 535 S.W.3d at 479 n. 7. "Our courts long have observed at the trial court level that parties are contractually entitled to recover their reasonable attorney's fees when they have an agreement that provides the prevailing party in a litigation is entitled to such fees." *Id.* at 478 (citations omitted).

[2] If the petitioner establishes the existence of both a substantial and a material change in circumstances, then the petitioner must overcome an additional hurdle, which is proving that he or she is entitled to a modification. *Covarrubias v. Baker*, No. E2016-02316-COA-R3-CV, 2017 WL 6276230, at *4 (Tenn. Ct. App. Dec. 11, 2017). For the petitioner to be entitled to a modification of his or her alimony
(continued…)

Here, Wife relies on the fact that her "need has increased" to prove a material change of circumstances. The trial court denied Wife's petition, finding that she failed to prove a material change in circumstances because she could not show that the changes she relied on were not anticipated or contemplated by the parties at the time of the 2003 modification. In its Memorandum Opinion and Order, the trial court noted,

> There is no other change of circumstances alleged in [Wife's] petition other than her increased need. There is no allegation as to why her need has increased since the previous order of 2003. . . . nor has she shown that the need was unforeseeable at the time of the previous order in 2003.
>
> [Wife]'s increased need may well constitute a substantial change of circumstances. However, [Wife] has failed to show a material change in circumstances. Therefore, the Court has no choice but to dismiss her Petition to Increase Alimony.

As the petitioning party, Wife has the burden of proving that there has been both a substantial and material change in circumstances since the parties' modified alimony support order was entered in 2003. *Bogan*, 60 S.W.3d at 727–28; Tenn. Code Ann. § 36-5-121(a). A change in circumstances is considered to be "material" when the change was not anticipated or contemplated by the parties at the time of the award and the change occurred since that time. *Id.* at 728 (citing *Watters*, 22 S.W.3d at 821).

At oral argument, counsel for Wife argued that having no job, no vehicle, and no housing was materially different than her circumstances at the time the current alimony order was ratified in 2003. We note, however, that Wife did not have a fulltime job in 2003; therefore, her lack of fulltime employment now cannot serve as a material change. We also note that Wife's monthly income, which is limited to her alimony and social security benefit, is substantially the same as it was in 2003.

As for her housing situation, Wife states that she cannot afford to buy a house or rent an apartment in Nashville. The record reflects that Wife has only owned one home since the 1975 divorce, which she sold after the 1980 modification and before the 2003 modification order was entered. As for the cost of renting an apartment, it was not unforeseeable that the cost of rental housing would have increased. Thus, this circumstance, although unfortunate, cannot serve as a factual basis for a material change of circumstance.

---

obligation, the petitioner must establish that the modification is justified based upon the same factors that are relevant to the initial award of alimony. *Bogan*, 60 S.W.3d at 730. "Those factors are found in Tenn. Code Ann. § 36-5-121(i) and include, *inter alia*, the relative earning capacity, financial resources, education, and separate assets of each of the parties." *Covarrubias*, 2017 WL 6276230, at *4.

As for the theft of her car, that specific circumstance was not reasonably foreseeable. Nevertheless, one must anticipate, or foresee, a few bumps in the road as the years go by. This modest loss, standing alone, is insufficient to constitute a material change of circumstances.

Wife also testified that she experienced unanticipated medical expenses due to drug fumes she was exposed to in her housing complex in Texas. Although she states that she went to the emergency room on several occasions, Wife presented no evidence of the medical expenses she incurred. Thus, the mere fact that she found it necessary to seek treatment at an emergency room on multiple occasions while in Texas is insufficient to constitute a material change of circumstances. Moreover, as the trial court surmised after noting that Husband was 85 and Wife was 76 years old at the time of trial:

> It is certainly reasonable for one or both parties to hope and expect to get older. It is certainly reasonable for one or both parties to anticipate a higher cost of living in future years. It is also certainly reasonable for one or both parties to anticipate that their expenses may increase establishing an increased need for more money.

In the final order, the trial court found that "[Wife] has not had an unforeseen or unanticipated loss of employment since the last order nor has she shown any additional circumstances that were unforeseen and unanticipated." We have determined that the evidence does not preponderate against the trial court's finding that Wife failed to prove a change of circumstances that was not anticipated or contemplated by the parties at the time of the award. Therefore, we affirm the trial court's decision to deny Wife's petition to increase alimony on the ground that she failed to prove a material change in circumstances.

## II.    ATTORNEY'S FEES

Husband asserts that the trial court erred in awarding Wife any amount of attorney's fees incurred in defending Husband's counter-petition to terminate his alimony obligation.

In post-divorce modification proceedings, a marital dissolution agreement may create a right to recover attorney's fees. *See Eberbach*, 535 S.W.3d at 474-75. In the absence of an attorney fee provision in a marital dissolution agreement, there are both statutory and common law grounds for awarding attorney's fees in alimony modification cases. *See Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *14 (Tenn. Ct. App. Aug. 23, 2004) ("[S]everal bases have been used as authority for an award of attorney's fees."). One statutory ground is found at Tenn. Code Ann. § 36-5-103(c), also known as "Tennessee's Enforcement of Orders statute." *Eberbach*, 535

S.W.3d at 475. The version of the statute in effect at the time this matter was decided provided that "[t]he plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for alimony, . . . both upon the original divorce hearing and at any subsequent hearing . . . in the discretion of such court." Tenn. Code Ann. § 36-5-103(c) (2017). "In a number of other modification cases, the court has simply relied on the general principles applicable to attorney's fees in divorce cases and on opinions involving initial awards." *Evans*, 2004 WL 1882586, at *15.[3]

More significantly, the reported decision of *Malkin v. Malkin*, 475 S.W.3d 252 (Tenn. Ct. App. 2015) explains that Tenn. Code Ann. § 36-5-103(c) authorizes the courts, in their discretion, to "award attorney's fees to an alimony recipient who is forced to defend an action to reduce or terminate that alimony." *Id.* at 263. (citing *Henderson v. Henderson*, No. M2013–01879–COA–R3–CV, 2014 WL 4725155, at *12 (Tenn. Ct. App. Sept. 23, 2014); *Evans*, 2004 WL 1882586, at *13–14; *Owens v. Owens*, No. M2012–01186–COA–R3–CV, 2013 WL 3964793, at *6 (Tenn. Ct. App. July 30, 2013) ("Reasonable fees may be awarded pursuant to § 36–5–103(c) in actions to enforce a decree for alimony, which has been interpreted as including the situation where an alimony recipient is forced to defend an action to reduce or terminate that alimony.")). Additionally, the *Malkin* court recognized that

> Alimony is only awarded in the first instance to an economically disadvantaged spouse who has a demonstrated need for the support. Absent a showing in a modification proceeding that the need no longer exists, requiring the recipient to expend that support for legal fees incurred in defending it would defeat the purpose and public policy underlying the

---

[3] The *Evans* decision goes on to explain a broad basis for awarding fees:

> We conclude that ample authority exists to authorize a court to award fees in a modification proceeding on the same basis, and according to the same principles, as a fee award is made in the divorce proceeding and initial award under in Tenn. Code Ann. § 36-5-101. Therefore, there exists a legal ground for the award of fees herein that is alternative, or additional, to the ground relied upon by the trial court.

> It has become well settled that an award of attorney's fees in divorce cases is considered alimony or spousal support, generally characterized as alimony *in solido*. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001); *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. Ct. App. 1996); *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992); *Storey v. Storey*, 835 S.W.2d 593, 597 (Tenn. Ct. App. 1992). Like other spousal support, an award of attorney's fees is available to either spouse.

*Evans*, 2004 WL 1882586, at *15 (footnotes omitted).

statute on spousal support. Additionally, the possibility of being burdened with a former spouse's attorney's fees helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation.

*Id.* at 264. (quoting *Henderson*, 2014 WL 4725155, at \*12); *see also Evans*, 2004 WL 1882586, at \*13.

Because *Malkin* is a reported case, "it constitutes binding precedent for Tennessee trial courts on the issue involved in this appeal unless our Supreme Court overrules it or our General Assembly changes the law." *In re Estate of Tucker*, No. E2014-02112-COA-R3-CV, 2015 WL 7068134, at \*3 (Tenn. Ct. App. Nov. 12, 2015). Thus, it is significant that our Supreme Court has not disturbed the *Malkin* decision in any respect.

As for the Tennessee General Assembly, it has taken no action to reverse or limit the scope of the *Malkin* decision. To the contrary, in order to resolve any uncertainty on the issue, the General Assembly amended the statute, effective July 1, 2018, to be wholly consistent with the ruling in *Malkin*. Although the amendment has no direct bearing on the rights of the parties to this action, it is relevant to note that the statute as amended pursuant to H.R. 2526, § 1, 110th Gen. Assemb., Reg. Sess. (Tenn. 2018), which is presently in effect, reads:

> **A prevailing party may recover reasonable attorney's fees**, which may be fixed and allowed in the court's discretion, **from the non-prevailing party in any** criminal or civil contempt action or other **proceeding to enforce, alter, change, or modify any decree of alimony**, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Tenn. Code Ann. § 36-5-103(c) (2018) (emphasis added).

Here, Wife was both a plaintiff and a defendant in the competing petitions to increase and decrease or terminate alimony. When Husband filed his counter-petition to terminate his alimony obligation, Wife defended the existing alimony decree, and by doing so Wife was seeking "to enforce" the existing award of alimony then in effect. *See Malkin*, 475 S.W.3d at 263; *See also Evans*, 2004 WL 1882586, at \*13 (citing *Duke v. Duke*, Nos. M2001-00080-COA-R3-CV, M2002-00026-COA-R3-CV, 2003 WL 113401 (Tenn. Ct. App. Jan. 14, 2003)). In another Court of Appeals case, *Duke v. Duke*, the husband argued that Tenn. Code Ann. § 36-5-103(c) did not allow the court to award fees to a defendant spouse in a post-divorce proceeding. *Id*. at \*5. The court rejected this argument stating:

We do not agree with Mr. Duke's interpretation of the statute. **The key is in the words "enforcing any decree for alimony or child support. . . ." A spouse who defends a petition to change an alimony or child support order is acting to enforce it.** The statute does not distinguish between winners and losers, and while the courts have sometimes made that a factor, *see Placencia v. Placencia*, 3 S.W.3d 497 (Tenn. Ct. App. 1999), we do not think it is the determining factor. In each case the court should do what is equitable. *See Sherrod v. Wix*, 849 S.W.2d 780 (Tenn. Ct. App. 1992).

*Duke*, 2003 WL 113401, at *5 (emphasis added).

In an exercise of its discretion, the trial court took into consideration Wife's significantly limited financial means along with Husband's considerable assets, and awarded Wife attorney's fees of $14,000. Having reviewed the record and considered the relevant factors, we find no abuse of discretion in awarding Wife attorney's fees pursuant to Tenn. Code Ann. § 36-5-103(c) for successfully enforcing the 2003 alimony decree Husband sought to reduce or terminate. Thus, we affirm Wife's award of attorney's fees.[4]

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellee, Franklin M. Jarman.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[4] In this appeal, Husband only challenges the award of any fees; he does not challenge the amount of attorney's fees awarded. Thus, we need not review the amount of the award.