
IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 8, 2020

## BOP, LLC, ET AL. v. PLASTIC SURGERY OF NASHVILLE, P.C., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 06C2734          David Randall Kennedy, Judge**

_____

### No. M2019-00588-COA-R3-CV

_____

This appeal arises from a complaint for breach of a commercial lease agreement brought by the landlord to recover damages from the tenant and its guarantor. The tenant admitted breaching the lease but asserted that the landlord had been made whole prior to the commencement of this action and was not entitled to an award of damages. The tenant also asserted a counterclaim for attorney's fees as authorized by the lease. The trial was bifurcated. A jury determined that the landlord was not entitled to recover any damages because the landlord recovered its damages in full in a previous proceeding in general sessions court, the landlord failed to mitigate its damages, and its claims were barred by res judicata. Following a bench trial on the parties' competing claims to recover attorney's fees and costs pursuant to the lease agreement, the court determined that the tenant and guarantor were entitled to recover their attorney's fees and costs as the prevailing parties. The landlord appeals. We affirm the court's decision in all respects. Because the lease agreement states the prevailing party in any action, or appeal thereon, shall be entitled to its reasonable attorney's fees and court costs and Defendants prevailed on all issues on appeal, we remand with instructions for the trial court to award Defendants the reasonable and necessary attorney's fees and costs they incurred in this appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT, J., joined.[1] RICHARD H. DINKINS, J., not participating.

G. Kline Preston, Nashville, Tennessee, for the appellants, BOP, LLC, BOP Partnership 2, Andrew Louis Hirt, and Douglas L. Hirt.

_____

[1] This case was assigned to the author on September 3, 2020.

James L. Weatherly, Jr., Nashville, Tennessee, for the appellees, W. Stanford Blalock and Plastic Surgery of Nashville, P.C.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

BOP, LLC ("Landlord") entered into a 60-month commercial lease agreement with Plastic Surgery of Nashville, P.C. ("PSON") on March 3, 2005, for office space in the Belle Meade Office Park in Nashville, Tennessee.[2] W. Stanford Blalock, M.D., president of PSON, guaranteed PSON's obligations under the lease.

Landlord promptly remitted $17,000 in build-out costs to PSON. Shortly thereafter, in May 2005, Dr. Blalock informed Landlord that PSON no longer needed the leased premises. PSON never took possession of the premises, and it never paid rent.

Landlord initiated the first of five separate but related filings of detainer warrants, civil warrants and complaints[3] on August 29, 2005, with the filing of detainer warrant 05-GT-8482 in the General Sessions Court for Davidson County against Dr. Blalock, individually. Landlord sought possession of the premises and damages for breach of the lease agreement.[4] The court entered a judgment against Dr. Blalock on September 9, 2005, for $39,767.38, from which no appeal was taken. Dr. Blalock remitted payment to Landlord's counsel on June 2, 2006, to satisfy the judgment entered against him with interest in full.

Two months after the first judgment, on October 25, 2005, Landlord filed the second detainer warrant, in which PSON was the only defendant, asserting the same claims for breach of the same lease agreement as in the prior detainer warrant against Dr. Blalock. This case was assigned number 05-GT-10571. The court entered a judgment against PSON on November 21, 2005, for $37,200. Because Landlord obtained a judgment against Dr. Blalock arising out of the breach of the same lease agreement in detainer action 05-GT-8482, PSON timely appealed the general sessions judgment in 05-GT-10571. The case was transferred to circuit court and assigned case number 05C-3666.

---

[2] The Secretary of State dissolved PSON, P.C. prior to the execution of the lease. Dr. Blalock testified at trial that he was not aware of this fact when the lease was signed.

[3] 1) General Sessions Court Detainer Action, 05-GT-8482, filed August 29, 2005, against Dr. Blalock only; 2) General Sessions Court Detainer Action, 05-GT-10571, filed October 25, 2005, against PSON only; 3) Circuit Court action, 05C-3666, filed December 8, 2005; 4) Circuit Court action, 06C-2734, filed on October 17, 2006; and 5) General Sessions Court Civil Warrant for attorney's fees, 06-GC-11747, filed October 25, 2006.

[4] PSON was not named as a defendant in this detainer warrant.

On December 8, 2005, Landlord filed its first pleading in the circuit court action, titled First Amended Complaint, to restate and amend its claims for relief. The complaint asserted various claims related to the lease agreement and sought damages "in excess of $15,000.00" against both PSON and Dr. Blalock.[5] PSON and Dr. Blalock filed an answer denying any liability and a counterclaim seeking to recover their costs and attorney's fees in defending the action, as provided in the lease agreement.

On June 29, 2006, Landlord filed its first civil warrant in general sessions court but was unable to serve the warrant on Dr. Blalock. As a consequence, Landlord filed civil warrant number 06-GC-11747 on October 25, 2006, wherein Landlord sought to recover its attorney's fees "of $14,999.00" incurred in case number 05-GT-8482. By agreement of the parties, the civil warrant was transferred to the circuit court, and was subsequently consolidated with civil action 05C-3666, at issue in this appeal.[6]

On July 3, 2006, Landlord filed a Motion for Summary Judgment in circuit court seeking damages of $76,634.68 arising from the alleged breach of the lease agreement and an additional $36,586.03 for prejudgment interest and attorney's fees. In an order entered on August 24, 2006, the trial court denied the motion and ordered that general sessions warrant 05-GT-8482 be consolidated with the action for purposes of determining what, if any, judgment should be entered. Soon thereafter, Landlord filed a notice of voluntary dismissal.[7]

Four days after filing the notice of voluntary dismissal, on October 17, 2006, Landlord filed the complaint at issue in this appeal against both PSON and Dr. Blalock (collectively, "Defendants") for breach of the lease agreement, seeking damages in excess of $15,000, attorney's fees, and other costs of collection including pre- and post-judgment interest.[8] The complaint also alleged that the charter of PSON had been revoked at the time the lease was executed; that Dr. Blalock, as the sole shareholder, director, and officer of PSON, was personally liable for PSON's debts and liabilities; and that he breached his "duty to know whether PSON was . . . a legal entity before entering into the lease agreement."

---

[5] The complaint also asserted claims for fraudulent conveyance, intentional misrepresentation, and negligent misrepresentation. Landlord subsequently dismissed these claims voluntarily, and they are not at issue in this appeal.

[6] The circuit court in the case at bar, assigned number 06C-2734, consolidated the aforementioned cases, numbered 05C-3666, 05-GT-8482, and 06-GC-11747, in an order entered on June 21, 2007.

[7] Landlord filed its notice of voluntary dismissal on October 13, 2006, and the Order of Voluntary Dismissal was entered on December 1, 2006.

[8] The complaint was filed after Dr. Blalock paid, in full, the judgment awarded Landlord in the first detainer warrant commenced in general sessions court.

Defendants admitted that the Secretary of State of Tennessee dissolved PSON on October 5, 2004. Defendants also admitted that Dr. Blalock, doing business as PSON, defaulted on the lease, but Defendants insisted that Dr. Blalock fulfilled all of his obligations as guarantor by paying $44,826.03 to Landlord.[9] Their answer also asserted that the complaint failed to state a claim for relief, that the claims were barred by res judicata, and that Landlord failed to mitigate its damages when it "unlawfully delayed and/or effectively refused to allow assignment" of the lease.[10]

The damages claim was tried before a jury on February 26 and 27, 2018.[11] Witnesses included Andrew Hirt, Dr. Blalock, and Dr. Ellen Jacobson.

Andrew Hirt, the real estate manager for Landlord, testified that, after an agent for Dr. Blalock contacted him about the need for office space, Landlord entered into a lease agreement with PSON with Dr. Blalock as its guarantor. According to Mr. Hirt's testimony, Landlord provided $17,000 in build-out costs for the space,[12] but, within a week or two of the commencement of the lease, Dr. Blalock was unsure he wanted to lease the premises. Mr. Hirt testified that neither PSON nor Mr. Blalock made any rent payments.

Mr. Hirt also testified that he tried to lease the property under "the subletting provisions of the lease agreement," but those provisions required the rent to be current. He considered two potential tenants, Ms. Freeman with E Plus Healthcare and Dr. Ellen Jacobson. According to Mr. Hirt, both were tenants of BOP, LLC, each was financially sound, and there was no reason not to lease the property to either of them. Mr. Hirt recalled that Dr. Jacobson wanted to rent the space; however, when Dr. Jacobson learned of Mr. Hirt's requirement that she be liable for PSON's unpaid rent, "she said she no longer needed it."

Mr. Hirt acknowledged filing two separate detainer warrants, one against Dr.

---

[9] While Defendants assert in their answer that Dr. Blalock paid $44,826.03 to satisfy the general sessions judgment, in their brief and in Dr. Blalock's testimony, the payment is listed as $42,048.59. Nevertheless, it is undisputed that Defendants satisfied the general sessions judgment in full, including post-judgment interest and attorney's fees.

[10] The parties filed numerous pleadings between the filing of the answer and the jury trial, which were addressed by the trial court and are not at issue in this appeal.

[11] At the pretrial conference preceding the jury trial on damages, the parties agreed that, under the terms of the lease agreement, the prevailing party would be entitled to reasonable attorney's fees and court costs. The parties also agreed to withdraw the attorney's fees issue from the jury's consideration and submit it to the court based on the result of the jury trial.

[12] Because the space identified was not suitable for a medical office, on April 18, 2005, Dr. Blalock was given $17,000 to use for a build-out of the premises.

Blalock, 05-GT-8482, and the second against PSON, 05-GT-10571. He acknowledged that both actions sought the same damages for breach of the lease agreement, and the latter was simply a second action against a co-defendant to recover the same judgment awarded against Dr. Blalock. Mr. Hirt acknowledged that his counsel received $42,048.59 from Dr. Blalock in June 2006 in satisfaction of the general sessions court judgment. Of that amount, he applied $28,000 to Landlord's damages and paid the balance to his attorney.

Dr. Blalock testified that, at the time he signed the lease, he was not aware that the Secretary of State dissolved PSON, P.C. As early as May 1, 2005, Dr. Blalock notified Andrew Hirt that he did not want to lease the space. Dr. Blalock claimed that he identified two potential tenants who wanted the space, one being Dr. Jacobson, and, in June 2005, Dr. Blalock met with Dr. Jacobson and Mr. Hirt. According to Dr. Blalock's testimony, Dr. Jacobson said she was willing to lease the premises for the same amount and the same term as Dr. Blalock's lease, but Mr. Hirt advised her that he could not lease the space to anyone until Dr. Blalock was current on the rent.

Dr. Blalock testified that, a couple of weeks later, Dr. Jacobson convened a second meeting with Dr. Blalock and Mr. Hirt. She, again, expressed her interest in leasing the office space and said she was under time constraints and needed an answer from Mr. Hirt in the next couple of weeks. Mr. Hirt stated that he could do nothing until Dr. Blalock paid the rent owed. Dr. Blalock testified that Mr. Hirt delayed approximately three months after Dr. Jacobson showed a willingness to lease the space. And he testified that there were no other meetings before Landlord filed an action against him.

The deposition of Dr. Jacobson was read to the jury as she was declared unavailable after invoking her statutory exemption from subpoena to the trial. Dr. Jacobson testified that she was a practicing physician with an office located in the Belle Meade Office Park, where she had been since 2004. In the summer of 2005, Dr. Jacobson tried to find additional office space in the Belle Meade Office Park building where the leased space at issue was located. She worked with Andrew Hirt to find space when she learned of the space leased to Dr. Blalock. Although she was interested in leasing the space, she was not interested in paying any back rents owed by Dr. Blalock. She testified that she did not lease Dr. Blalock's space because Mr. Hirt wanted to be made whole by Dr. Blalock before he would lease the premises to her.

The jury returned a verdict in favor of Defendants on all issues. The jury determined that Landlord's claim for damages resulting from the breach of the lease agreement had been satisfied, that Landlord failed to mitigate its damages, and that Landlord's claim was barred by res judicata. The verdict was memorialized in an order entered on March 12, 2018.

A hearing on the issue of attorney's fees and the corporate status of BOP, LLC, and PSON, P.C., was held on May 3, 2018. In its final order entered on May 11, 2018, the trial

court determined that the Secretary of State had dissolved the limited liability company known as BOP, LLC; that the successor entity to BOP, LLC, was a general partnership known as BOP Partnership 2; and that its partners were Douglas L. Hirt and Andrew Louis Hirt (collectively, "Plaintiffs"). It also determined that the Secretary of State reinstated PSON's corporate status; therefore, its previous dissolution was of no effect. The court also ruled that Defendants were entitled to recover their costs and attorney's fees pursuant to the lease agreement and awarded a judgment of $135,262.50 to Defendants.

Plaintiffs appeal, raising the following issues:

1. Whether the trial court erred by refusing to charge the jury on Plaintiffs' right to bring successive actions pursuant to Tenn. Code Ann. § 20-6-201.
2. Whether the trial court erred by substituting BOP Partnership 2, Douglas L. Hirt, and Andrew Louis Hirt as Plaintiffs for BOP, LLC.
3. Whether the trial court erred by permitting Plastic Surgery of Nashville, PC, to be reinstated as a party.
4. Whether the trial court erred by awarding Defendants their costs and attorney's fees.[13]

The sole issue raised by Defendants is whether they are entitled to an award of attorney's fees and costs incurred in this appeal.

## II. ANALYSIS

### A. JURY INSTRUCTION

Plaintiffs contend the trial court's failure to instruct the jury on their right to bring successive actions pursuant to Tenn. Code Ann. § 20-6-201 misled the jury because it resulted in an "inaccurate presentation of the law."[14] Specifically, Plaintiffs contend the error misled the jury to believe it "did not have a legal path to be able to decide in favor of [Landlord] because[,] without an instruction on successive action[s][,] the instructions of *res judicata* and duty to mitigate damages were the jury's only apparent choices." PSON contends there was no error, but, even if Landlord was entitled to an instruction on successive actions, the issue was moot because the jury determined that Landlord did not suffer any damages.

---

[13] Plaintiffs identified a fifth issue: "Whether this case should be remanded and reassigned to a different trial judge?" We, however, find this issue is waived because Plaintiffs' three-sentence treatment of the issue fails to articulate a legal basis or a logical argument. *See* Tenn. R. App. P. 27(a)(7); *see also Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

[14] Although the requested jury instruction is not in the record, Plaintiffs state that the requested instruction was a recitation of the statute, and Defendants do not contend otherwise.

The law on successive actions states that "[s]uccessive actions may be maintained on the same contract or transaction whenever, after the former action, a new cause of action arises therefrom." Tenn. Code Ann. § 20-6-201. After Landlord requested the instruction, Defendants objected. Following a colloquy among counsel for the parties and the court, the court ruled as follows:

I don't think it's appropriate. I'm not going to charge it. I'm not going to do it. I think it -- I understand why you want it done. I think it's a misleading instruction. And I don't think the facts of this case have been presented in this case to this jury for that instruction at this time, in this matter. So we'll strike that one.

Thereafter, the court instructed the jury as follows:

The parties in this case have stipulated that the lease contract between them was breached by the Defendant. Any unexcused breach of a contract allows a non-breaching party to recover damages. When a contract is breached, the Plaintiff is entitled to be placed in as good a position as would have been occupied had the contract been fulfilled in accordance with its terms.

The Plaintiff is not entitled to be put in a better position by a recovery of damages for breach of contract than would have been realized had there been full performance. The damages to be awarded are those that may be fairly and reasonably --that may fairly and reasonably be considered as arising out of the breach or those that may reasonably have been in the contemplation of the parties when the contract was made. Damages that are remote or speculative may not be awarded.

When piercing the corporate veil, the Court may disregard the corporate entity in order to impose liability against a related entity. Such as a parent corporation or controlling shareholder where the two entities are, in fact, identical or indistinguishable and were necessary to accomplish justice.

In a breach of contract claim between the lessor and the lessee for the collection of rent, the lessor must do what is fair and reasonable to reduce the damages. Even though the tenant breaches the rental contract, the landlord is not entitled to a judgment for damages that could have been avoided by reasonable effort. A landlord is under a duty to mitigate damages upon the abandonment of the premises by the tenant. To constitute abandonment of the lease premises, there must be an absolute relinquishment of the premises by the tenant and by an act and an intent to abandon. However, the lessee has the burden of proof to establish the lessor's failure to mitigate their damages.

You are instructed that the terms fair and reasonable as used in this issue means that the method Plaintiff employed to avoid consequential injury was reasonable under the circumstances existing at the time. And while the

latitude of discretion must be allowed to the person who by another's wrong has been forced into a predicament where he is faced with a probability of injury or loss. Only the conduct of a reasonable person is required of him or a reasonable man is required of him, or a reasonable woman is required of her.

The Defendants have assert[ed] as a defense to the Plaintiff's action that the Plaintiff's claim is barred by the doctrine of res judicata. The doctrine of res judicata or claim preclusion bars a second suit between the same parties or their privies on the same claim with respect to all issues which were or could have been litigated in the former suit.

The party asserting a defense predicated on res judicata or claim preclusion must demonstrate that the underlying judgment was rendered by a court of competent jurisdiction, that the same parties or their privies were involved in both suits, that the same claim or cause of action was asserted in both suits, and that the underlying judgment was final and on the merits.

In this matter, the Defendants assert that they were in privity with each other regarding the lease agreement, and that a judgment against one Defendant was a judgment against the other. The term privity denotes mutual relationship to the same rights of property.

Privity is a derivative interest founded on or growing out of contract, connection or bond of union between the parties or mutuality of interest. If you find from the proof presented that a judgment was previously rendered in this breach of lease action, by a court of competent jurisdiction, that the parties in this action were also parties to the previous action or the parities were in privity with each other, that the same claim cause of action was asserted in both suits and that the underlying judgement from the first action was found and on the merits, then you shall find that the defense of res judicata bars this action by the Plaintiff and find in favor of the Defendants.

"[W]hether a jury instruction is erroneous is a question of law and is, therefore, subject to de novo review with no presumption of correctness." *Payne v. CSX Transportation, Inc.*, 467 S.W.3d 413, 448 (Tenn. 2015) (quoting *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011)).

[I]n determining whether a trial court has imparted "substantially accurate" jury instructions, we review the charge in its entirety and consider it as a whole; we will not invalidate instructions that "'fairly define[ ] the legal issues involved in the case and do[ ] not mislead the jury.'" Moreover, we may consider the jury instructions in conjunction with the verdict form in determining whether the issues were presented to the jury "in a clear and fair manner."

*Id.* (internal citations omitted). As for a party's request for a jury instruction:

Trial courts should carefully consider requested instructions because the requesting parties are entitled to them (1) if they are supported by the evidence, (2) if they embody a theory relied on by the party, (3) if they are correct statements of the law, and (4) if their substance is not already contained in other portions of the charge. However, trial courts may decline to give a requested instruction (1) if it is not supported by the evidence, (2) if its substance is already covered in the charge, or (3) if it is incorrect or incomplete in any respect.

*Borne v. Celadon Trucking Services, Inc.*, 532 S.W.3d 274, 297–98 (Tenn. 2017) (quoting *Ingram v. Earthman*, 993 S.W.2d 611, 635–36 (Tenn. Ct. App. 1998) (*abrogated* on other grounds) (internal citations omitted)). "A trial court will be reversed for an erroneous omission of a jury instruction only where the error prejudices the rights of the requesting party." *Id.* at 300 (citing *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 205 S.W.3d 365, 372 (Tenn. 2006)).

"This court has repeatedly found erroneous or omitted instructions to be harmless when we have concluded that the error did not or could not have played a material role in the jury's decision-making process." *Id.* (quoting *Grandstaff v. Hawks*, 36 S.W.3d 482, 497 n.28 (Tenn. Ct. App. 2000)). The Supreme Court stated that the "proper standard is the 'material evidence' standard; a trial court may instruct the jury on an issue of fact within the scope of the pleadings when there is evidence in the record that is 'sufficient to sustain a verdict' on the issue, i.e., material evidence." *Id.* at 298 (quoting *White v. Premier Med. Grp.*, 254 S.W.3d 411, 416 (Tenn. Ct. App. 2007)).

The trial court based its decision to deny the requested instruction on the insufficiency of the evidence presented to the jury. Furthermore, the court stated that the instruction would mislead the jury.

In the first detainer warrant, Landlord sought to recover possession of the leased premises, rent in the amount of $7,504.32, $20,000 in buildout costs, and attorney's fees in the amount of $9,158, for a total judgment of $36,663.32. On September 9, 2005, the court entered a judgment in favor of Landlord on all claims and a monetary award of $39,767.38. Andrew Hirt conceded at trial that Landlord received a check for $42,048.59 "to pay off the judgment against PSON and Dr. Blalock." After Dr. Blalock satisfied the judgment, Landlord filed a complaint in the circuit court on October 17, 2006, for breach of the same commercial lease agreement—the distinction being that it was seeking to recover damages, including rent, which accrued following the entry of the September 9, 2005 judgment.

A "suit may be brought in successive actions upon each default in an installment for the amount of that defaulted installment." *Farmers & Merchants Bank v. Templeton*, 646

S.W.2d 920, 923 (Tenn. Ct. App. 1982) (citing *Barnes v. Black Diamond Coal Co.*, 47 S.W. 498, 499–500 (Tenn. 1898) (holding that "[i]nstallments of rent are subject to the same rule as installments of money due, and an action may be brought as each installment falls due" and that "[a] new cause of action arises and becomes enforceable with every successive installment")). Therefore, this subsequent suit to recover rents that "had not accrued" constituted a new cause of action. However, the dispositive issue to be decided by the jury was whether Landlord was entitled to recover damages, not whether it could bring a successive action on the same contract or transaction when a new cause of action arose.

The jury verdict form stated: "The parties have stipulated that the Defendants have breached the contract." The form further stated:

> Based upon the evidence presented, we, the jury, answer the following questions unanimously:
>
> CHOOSE #1 or #2:
>
> 1. The Plaintiff suffered damages as a result of the breach. The amount of damages suffered by the Plaintiff for which the Defendants are liable [is] $_____.
>
> OR
>
> 2. The Plaintiff did not suffer any damages because the Defendants ha[ve] established the following defense(s) (*check all that you found, if any*):
>
> > ☐ The breach did not cause Plaintiff any damages.
> > ☐ This claim is barred by res judicata.
> > ☐ The damages have already been paid in full by the Defendants.
> > ☐ The Plaintiffs failed to completely mitigate their damages.

The jury did not award Landlord any damages. Instead, the jury chose option two and checked off each of the defenses listed.

The jury determined that Landlord did not suffer any damages. Based on the evidence presented at trial, we understand the verdict to mean that Landlord did not sustain any damages above and beyond the $39,767.38 judgment it received on September 9, 2005, for which it was fully reimbursed prior to the commencement of this action.

As Defendants correctly state in their brief:

> When the jury determined that [Landlord] had suffered no damages, which

damage claim was presented to them in lengthy form by [Landlord] as lost rents, commissions, attorney's fees and interest, the issue of whether [Landlord] had the right to bring successive actions to collect damages was rendered moot.

Therefore, whether Landlord was entitled to an instruction on successive actions is moot because the jury determined that Landlord did not suffer any damages.

As such, even if the trial court erred by excluding the requested jury instruction, it was harmless because it resulted in no prejudice to Landlord or to the judicial process. For a court to grant relief on an error, the court must determine that the error more probably than not affected the judgment or would result in prejudice to the judicial process. *See* Tenn. R. App. P. 36 (b); *see also Newcomb v. Kohler Company*, 222 S.W.3d 368, 395 (Tenn. Ct. App. 2006).

For the foregoing reasons, we affirm the court's decision not to charge the jury on the law on successive actions.

### B. Substitution of BOP Partnership 2 and the Hirts as Plaintiffs

Andrew Hirt and Douglas Hirt contend it was "plain error" for the court to substitute them and their partnership, BOP Partnership 2, for BOP, LLC, as the plaintiffs.[15] Stated another way, they contend the court erred by ordering that the monetary judgment rendered in favor of Defendants be awarded against BOP Partnership 2, Douglas L. Hirt and Andrew Louis Hirt. Defendants counter, contending that the trial court had the discretion to substitute the partnership and its partners as parties pursuant to Tenn. R. Civ. P. 25.03 because the interest and liability of Landlord was transferred to BOP Partnership 2 and its partners, the Hirts, during the pendency of this action.

Rule 25.03 states in pertinent part:

In case of any transfer of interest the action may proceed by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

Tenn. R. Civ. P. 25.03. "A trial court's decision on a motion to substitute parties is reviewed for abuse of discretion." *Ismoilov v. Sears Holdings Corp.*, No. M2017-00897-COA-R3-CV, 2018 WL 1956491, at *10 (Tenn. Ct. App. Apr. 25, 2018) (quoting *Holley v. Blackett*,

---

[15] Plaintiffs conceded, in their brief, that the substitution of BOP Partnership 2 for the LLC "might be proper" since it was the same entity, such that the LLC merged into the partnership.

No. W2011–02115–COA–R3–CV, 2012 WL 4799053, at *3 (Tenn. Ct. App. Oct. 10, 2012)).

> An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

*Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

In 2009, Defendants filed documents showing that BOP, LLC, ceased to exist and its interests merged into BOP Partnership 2 on October 17, 2006. Specifically, Defendants filed "registration documents" from the Office of the Secretary of State that Douglas Hirt signed as the Managing Member of BOP, LLC, and as the Managing General Partner of BOP Partnership 2. In pertinent part, the documents stated that BOP, LLC, merged into BOP Partnership 2 effective October 17, 2006.[16]

On April 10, 2015, Andrew Hirt, Douglas Hirt and BOP Partnership 2 filed a document titled "Plaintiff's Pre-Trial Brief on Damages" in which they identified themselves as the plaintiffs along with BOP, LLC. The first paragraph of the brief states: "COME NOW, THE Plaintiff/Counter-Defendant, BOP LLC, BOP Partnership 2, Douglas L. Hirt, and Andrew Louis Hirt, (hereinafter "Plaintiffs") and files this PRE-TRIAL BRIEF ON DAMAGES."

Furthermore, when the case went to trial, Andrew Hirt testified that BOP, LLC, "was really technically unconstituted [sic] and reconstituted [into another entity]. It's just the corporate form [that] changed . . ." and "the ownership or the management of [BOP] continued as [sic] the role of the LLC."

As noted above, when there is a transfer of interest by a party to an action, Rule 25.03 affords the trial court the discretion to direct the person or business entity to whom or to which the interest is transferred to be substituted in the action or joined with the original party. Further, Tenn. Code Ann. § 61-1-306(a) provides that "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the

---

[16] The documents were filed in 2009 in support of Defendants' motion to amend their counterclaim.

- 12 -

claimant or provided by law." It is undisputed that BOP, LLC's interest in the lease agreement and this civil action were transferred to BOP Partnership 2. While Plaintiffs denied the assertions in Defendants' amended counterclaim, stating that Douglas Hirt, as the managing general partner of BOP, and Andrew Hirt, who "on information and belief [is] a partner in BOP," were jointly and severally liable, they did not deny, in their brief on appeal or testimony, that they were partners, or assert that they did not have an interest in, BOP Partnership 2. Thus, we conclude, based on the aforementioned evidence, that both Andrew Hirt and Douglas Hirt are partners in BOP Partnership 2 and, as such, are liable for its obligations.

Therefore, the trial court did not err by substituting BOP Partnership 2 and its partners, Douglas and Andrew Hirt, as plaintiffs following the trial on damages. Moreover, we find no error with the court awarding the monetary judgment for attorney's fees against Douglas and Andrew Hirt, individually, as partners of BOP Partnership 2.

## C.  REINSTATEMENT OF PSON. P.C.

Plaintiffs contend the trial court erred when it "permit[ted] [PSON] to be reinstated" after the jury rendered its verdict, but they do not cite to any legal authority in support of their argument. Although Plaintiffs state in their brief that the issue is whether the court erred by reinstating PSON, upon review of each party's argument, it appears the issue is whether the court erred when it reopened the proof after the trial to allow Defendants to establish that the Secretary of State reinstated PSON, P.C.

Defendants contend the court did not permit PSON to be "reinstated" because that authority lies with the Secretary of State. Defendants also contend the trial court acted within its authority when it reopened the proof and allowed them to provide evidence of PSON's reinstatement by the Secretary of State.

"[I]t is 'within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge . . . will not be set aside unless there is a showing that an injustice has been done.'" *Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn. 2002) (quoting *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991)).

This court addressed a similar issue in *McBay v. Cooper*, wherein we stated that "[t]he injustice which renders erroneous a reopening of proof is serious inconvenience to a party, the jury or the court, or the introduction of further evidence without a fair opportunity for rebuttal." No. 01-A-019205-CV-00202, 1992 WL 205256, at *3 (Tenn. Ct. App. Aug. 26, 1992). Plaintiffs do not cite to any evidence that the reinstatement of PSON had an effect on the jury's verdict, and, upon our review, we find none.

It is undisputed that PSON was administratively dissolved in 2004 and remained so

when the jury rendered its verdict. However, the Secretary of State reinstated PSON's corporate status during the pendency of this action. Tennessee Code Annotated section 48-24-203(c) states that "[w]hen the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution, and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." *See KHB Holdings, Inc. v. Duncan*, No. E2002-02062-COA-R3-CV, 2003 WL 21488268, at *2-3 (Tenn. Ct. App. June 25, 2003) (the court agreed with the corporation's contention that "if [its] charter had been reinstated before trial, its contract with [the owners] would have been validated pursuant to Tenn. Code Ann. § 48-24-203(c) . . ."). Thus, PSON's reinstatement took effect as of the date of dissolution.

For the foregoing reasons, we find no error with the trial court's decision to reopen the proof to allow Defendants the opportunity to provide evidence of PSON's reinstatement by the Secretary of State. Further, we find no error with the trial court's decision to recognize PSON as a de jure corporation and a party to this action.

### D. ATTORNEY'S FEES

Plaintiffs contend the court erred in awarding attorney's fees to Defendants when PSON defaulted on the lease agreement and Dr. Blalock failed to fulfill his obligations as guarantor. Plaintiffs' prevailing-party argument is premised on section 13 of the lease agreement, which provides that the landlord is entitled to compensation if the tenant defaults. They contend that the court erred by failing to apply this provision in determining who was entitled to attorney's fees. Because Defendants defaulted on the lease, Plaintiffs contend Defendants cannot be the prevailing party.

We find this argument disingenuous because, as the trial court correctly noted in its order addressing the attorney's fee issue, "the parties agreed that under the terms of the lease contract between the parties that the prevailing party to the litigation would be contractually entitled to an award of reasonable attorneys' fees incurred in the prosecution or defense of the lawsuit and court costs." Additionally, the parties agreed that they "would submit that issue to the court after the jury had reached its verdict on the causes of action and defenses asserted." In the same order, the trial court identified the evidence submitted by the parties and found, in pertinent part:

> W. Stanford Blalock and Plastic Surgery of Nashville, P.C., the Defendants in this case, both have standing to seek and be awarded their reasonable attorneys' fees. To the extent that the Plaintiff asserts that the Defendants lack standing, the Court finds that the Plaintiff is judicially estopped to assert lack of standing at this stage of the proceedings. The Court has previously found based on the motion of Plaintiff that Plastic Surgery of Nashville, PC was the alter ego of Dr. Blalock and that they were for all intents and purposes one in the same.

The contract between the parties provides that the prevailing party is entitled to an award of reasonable attorneys' fees, and the prevailing parties were clearly Dr. Blalock and Plastic Surgery of Nashville, PC.

When it comes to attorney's fees, Tennessee has long followed the "American Rule," which provides, in pertinent part, that "'a party in a civil action may recover attorney's fees . . . if . . . a contractual or statutory provision creates a right to recover attorney's fees[.]'" *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (quoting *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009)). The Court held that, "if an agreement [containing a mandatory fee award provision] is valid and enforceable, it must be enforced as written regardless of whether the parties are before a trial court or an appellate court." *Id*. at 478. In this case, both parties agreed that the lease was valid and enforceable. Therefore, we will review sections 13.2 and 44 of the lease, which relate to the award of attorney's fees.

Plaintiffs assert that they were entitled to attorney's fees under section 13 of the lease. Section 13.2 lists the remedies available to Landlord if Defendants breach the agreement, stating:

(a) In the event of any default or breach of this Lease by Tenant, Landlord may, at any time thereafter, with or without notice or demand, and without limiting Landlord in the exercise of any right or remedy which Landlord may have by reason of such default:

(i) terminate Tenant's right to possession of the Premises by any lawful means, in which case this Lease and the Term hereof shall terminate and Tenant shall immediately surrender possession of the Premises to Landlord. If Landlord terminates this Lease, Landlord may recover from Tenant . . .; and (D) any other amount necessary to compensate Landlord for all detriment proximately caused by Tenant's failure to perform its obligations under the Lease or which in the ordinary course of things would be likely to result therefrom, including, but not limited to, the cost of recovering possession of the Premises, expenses of releasing, including necessary renovation and alteration of the Premises, reasonable attorneys' fees, any real estate commissions actually paid by Landlord and the unamortized value of any free rent, reduced rent, tenant improvement allowance or other economic concessions provided by Landlord.

Defendants rely on section 44 of the lease, which states that "[i]f Landlord or Tenant brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party

in any such action, or appeal thereon, shall be entitled to its reasonable attorneys' fees and court costs. . ."

As noted earlier, Landlord initiated five separate but related actions to recover possession of the leased premises and/or to recover its damages, including but not limited to rent. It prevailed in only one of those actions, and, in that one action, it was awarded possession of the premises, recovery of the build-out funds it advanced, and lost rent. Additionally, and very pertinent to this issue, Landlord recovered the attorney's fee it incurred in prosecuting the one action in which it prevailed. The civil action in this appeal, however, is a separate action and neither Landlord nor Plaintiffs prevailed in this action.

Landlord brought this action to enforce the lease agreement and recover unpaid rent, but the jury did not award relief. To the contrary, the jury returned a verdict in favor of Defendants on all issues tried in this action, the purpose of which was "to enforce the terms [of the lease agreement] or declare rights" of the parties to the lease agreement. Accordingly, Defendants prevailed in the action.

Because the lease agreement expressly states that the prevailing party "shall be entitled to its reasonable attorneys' fees and court costs," the trial court correctly ruled that Defendants were entitled to recover their reasonable attorney's fees and costs.[17]

Based upon our decision to affirm the trial court's judgment in all respects, we conclude that Defendants are the prevailing parties and, as such, are contractually entitled to the attorney's fees and costs incurred in this appeal. Therefore, we remand with instructions for the trial court to award Defendants the reasonable and necessary attorney's fees and costs they incurred in this appeal.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in all respects and remand for further proceedings consistent with this opinion. Costs of appeal are assessed against BOP, LLC, BOP Partnership 2, Andrew Louis Hirt, and Douglas L. Hirt, jointly and severally.

_____

FRANK G. CLEMENT, JR., P.J.

---

[17] Plaintiffs do not contest the amount of the award, only who was entitled to recover attorney's fees.